IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY E. NOLES,
    Plaintiff,

vs.                                      Case No: 3:07cv31/LAC/MD

CAPTAIN A.E. BROWN and
SERGEANT R. RADFORD,
    Defendants.

## REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon the defendants' motion for summary judgment (doc. 23), plaintiff's response and cross motion for summary judgment. (Doc. 25). On December 5, 2007, this court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the motion would be taken under advisement on January 7, 2008. (Doc. 26). Plaintiff filed a supplemental affidavit. (Doc. 27). Upon consideration of the defendants' motion, it is the opinion of the undersigned that the motion should be granted.

### Background

Plaintiff is currently incarcerated at Okaloosa Correctional Institution serving a life sentence. He initially brought this action in January of 2007 pursuant to 42 U.S.C. § 1983 to redress alleged violations of his First Amendment Rights. In his

second amended complaint (doc. 14) (henceforth "complaint"),[1] plaintiff names two defendants: Captain A.E. Brown and Sergeant R. Radford.

Plaintiff states that on November 16, 2006, he submitted an informal grievance complaining that he and other inmates were forced to remain in the recreation yard for three hours in cold, windy weather without appropriate apparel. (Doc. 14, ¶ 1 and exh. A). The response to the grievance indicated that inmates were sent to the recreation yard due to problems with the sewage treatment plant in an attempt to avoid overflow, and that there was "nothing cruel about this situation." (Doc. 14, exh. A).

On November 18, 2006 plaintiff was called to the office of the officer in charge, where Captain Brown talked to plaintiff about the grievance he had filed. Brown allegedly made comments to the effect of what did plaintiff think he was doing, asked plaintiff whether he knew what cruel treatment was, and said that soldiers getting killed in Iraq was cruel. Plaintiff responded that all he needed was winter clothing to stay warm, to which Brown replied that the DOC's budget was being cut and that they could not afford that. Brown told plaintiff the reason the inmates had been sent to the recreation yard. Plaintiff asked whether the water to the dorms could have been turned off, to which Brown responded in the negative. (Doc. 14, ¶ 2).[2]

While plaintiff was in Brown's office, Sgt. Radford came in, looked at plaintiff's name tag and asked plaintiff for his cell and combination lock numbers which he wrote down. (Doc. 14, ¶ 3). Radford told the captain that he had searched the wrong "Noles."[3] The two men joked for a moment about the property that had been taken from the other inmate, after which Captain Brown indicated he was through with the

---

[1] The allegations in this complaint were sworn under penalty of perjury on June 29, 2007.

[2] Plaintiff later states that on December 30, 2006, the water to the dormatories was turned off, thus disproving Brown's statement that this could not be done. (Doc. 14, ¶ 11).

[3] At the time of the events in question, there was an inmate with the surname "Knowles" at the institution.

plaintiff, and that Sgt. Radford could take him to the dorm and search him. (Doc. 14, ¶ 4).

Radford walked plaintiff to his cell and searched it, writing plaintiff a "corrective consultation" ("CC") for possession of contraband constituting extra ink pens, two extra drinking cups, an empty pill bottle and some scratch paper. Plaintiff concedes that the CC is valid "except for its motivation." (Doc. 14, ¶5). He asserts that he lost his ability to earn eight days of gain time for the month because the CC lowered his security evaluation for that month. Radford allegedly told the plaintiff at the time of the search that he could have given plaintiff a DR, but was just going to give him a CC. *Id.* Plaintiff notes that his cell had been subject to a random search the previous night and none of his property had been confiscated as contraband. (Doc. 14, ¶ 6).

Plaintiff then filed a formal grievance of reprisal, in hopes of getting the valid, but improperly motivated, CC off of his record so he would not lose any gain time. (Doc. 14, ¶ 7, and exh. B). Plaintiff's grievance was returned unanswered. The response indicated that it was not accepted as a grievance of reprisal, that plaintiff had not included necessary attachments,[4] and that plaintiff had provided "no evidence to substantiate [his] allegations of reprisal." (Doc. 14, exh. B). He was advised that he could correct the stated deficiency and refile within allowable time frames.

Plaintiff did not refile, but instead filed a formal grievance of reprisal on December 1, 2006 directly to the Office of the Secretary. (Doc. 14, exh. C). Although he does not state in the grievance that it is an appeal, he refers to the grievance filed at the institution level and indicates that he seeks the same relief he previously

---

[4]Section 33-103.014, Florida Administrative Code provides that grievances may be returned without further processing and without a response on the merits if the grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C. 33-103.014(1)(g), F.A.C. Section 33-103.006 of the Florida Administrative Code provides that certain grievances may bypass the informal grievance step, including grievances of reprisal. 33-103.006(3)(c), F.A.C.

sought. This grievance/appeal also was not accepted as a grievance of reprisal. Plaintiff was advised that his grievance did not comply with Chapter 33-103 because his "grievance at the institutional level was in non-compliance resulting in the appeal being in non-compliance." The request for administrative appeal was thus returned without action. (Doc. 14, exh. C).

On December 14, 2006, plaintiff received notice that the fact that he had received the CC caused his security evaluation to be lowered, and he was thus denied the ability to earn 8 days of gain time as a result. (Doc. 14, ¶ 10). Plaintiff states that he did not grieve this notice since he had already grieved the CC.

Plaintiff contends that defendants Brown and Radford both personally retaliated against him by making it known to him that as a result of his filing an informal grievance, his cell would be searched. Plaintiff further claims that he was given the CC for items that "in a routine or random search are not necessarily considered to be contraband," although, as noted above, he concedes his possession of contraband and the validity of the CC. He seeks compensatory, punitive and nominal damages.

Defendants have moved for summary judgment, contending that plaintiff has failed to exhaust his administrative remedies. (Doc. 23).

### Exhaustion Requirement

It is well established that the failure to have exhausted administrative remedies prior to filing suit is grounds for dismissal of plaintiff's case. *Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005); *Alexander v. Hawk,* 159 F.3d 1321 (11th Cir. 1998); *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000). The exhaustion requirement applies to all inmate suits about any aspect of prison life, including cases in which prisoner plaintiffs seek only monetary damages. *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006); *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731,

121 S.Ct.1819, 1825, 149 L.Ed.2d 958 (2001); *Johnson v. Meadows,* 418 F.3d at 1155. This requirement is mandatory, and there is no discretion to waive it. *Woodford*, 126 S. Ct. at 2382; *Alexander v. Hawk*, 159 F.3d 1321, 1324–26 (11th Cir. 1998). The purposes for administrative exhaustion are twofold. First, exhaustion protects "administrative agency authority," giving agencies the opportunity to correct their own mistakes before being haled into federal court. *Woodfort*, 126 S.Ct. at 2385. Second, it promotes efficiency, in that claims can generally be resolved more quickly and economically in proceedings before an agency than in federal court. *Id.* The PLRA exhaustion requirement requires full and proper exhaustion of an inmate's claims, which means that a prisoner must comply with the procedural rules of the institution's grievance system. *Woodford*, 126 S. Ct. at 2387–88.

Chapter 33-103 of the Florida Administrative Code provides for a multi-tiered grievance procedure. This procedure generally requires that an inmate exhaust his administrative remedies through the filing of an informal grievance, a formal grievance, and an appeal to the Office of the Secretary. See Rule 33-103.005 to 103.007 (2006). However, an informal grievance is not required before filing a grievance of reprisal. Department rules permit the filing of a grievance of reprisal directly to the Warden of the institution in which an inmate is housed. See Rule 33-103.005(1), F.A.C.; Rule 33-103.006(2)(h), F.A.C; Rule 33-103.006(3)(c), F.A.C. Further, Department rules permit the filing of a grievance of reprisal directly to the Office of the Secretary. See Rule 33-103.007(6)(a)1, F.A.C. For such a grievance, the inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal steps. See Rule 33-103.007(6)(a)2, F.A.C. If a grievance submitted as a grievance of reprisal is received and it is determined that the grievance is not a grievance of reprisal, the grievance is returned to the inmate with the reasons for return specified, and advising the inmate to resubmit his or her grievance at the appropriate level. See Rule 103.007(6)(e), F.A.C.

**A grievance may be returned without further processing if a condition enumerated in Rule 33-103.014, F.A.C. is found to exist.  Rule 33-103.014(1)(f) F.A.C., which was not cited in the response to plaintiff's grievances, permits the return of a grievance without further processing if the inmate does not provide a valid reason for by-passing the previous levels of review as required, or the reason provided is not acceptable.  This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.  Rule 33-103.014(1)(g), F.A.C. permits the return of a grievance without further processing if the grievance does not have the required attachments (e.g., an appeal grievance must contain a copy of the formal grievance and response), or is not properly filed pursuant to Rule 103.007(6), F.A.C., e.g., does not state why other steps in the grievance process were bypassed.  Rule 33-103.014(p), F.A.C., which also was not cited in the response to plaintiff's grievances, permits the return of a grievance without further processing if the inmate is raising allegations and charges in a grievance appeal that "have not been raised below at the previous level."**

**Defendants assert that plaintiff failed to properly exhaust his administrative remedies as the grievances he filed were not filed in accordance with Department procedure, and were returned without action.  Plaintiff's first grievance to the warden was not accepted as a grievance of reprisal.[5]   Plaintiff was specifically advised that the grievance did not have the required attachments, the informal grievance and response, thus alerting him to the fact that he needed to file an informal grievance.  The Florida Administrative Code is clear that plaintiff's challenge to the CC should have been pursued under 33-103.005(1).  This section lists several exceptions to the requirement that the administrative process commence with an  informal grievance.  Whereas disciplinary reports are excepted**

---

[5]Although no specific citation is provided, this may be a reference to 33-103.014(1)(f), which provides for return of a grievance if the reason stated for bypassing previous levels of review is unacceptable.  The response further indicated that plaintiff had failed to provide evidence to substantiate his allegations of reprisal, a conclusion the court need not examine here.

from that requirement, corrective consultations are specifically noted as not being encompassed within those exceptions. *Id.* The record is clear that plaintiff did not file an informal grievance, which is required to challenge a CC. Finally, although plaintiff was afforded the opportunity to correct the deficiency and refile, he did not do this, instead choosing to file a grievance/appeal with the Office of the Secretary.

The procedural posture of the second grievance is not entirely clear. Within the grievance, plaintiff cites the rule providing that grievances of reprisal may be filed directly with the Office of the Secretary. This suggests that perhaps the grievance is intended as a direct filing. However, he then refers to his previous filing and the relief requested therein, suggesting that the second "grievance" is actually an appeal. The agency response addressed both possibilities, stating that the "grievance" was not accepted as a grievance of reprisal while also referring to plaintiff's submission as an "administrative appeal." (Doc. 23, exh. B at 2). To the extent plaintiff asserted that the grievance was one of reprisal as the reason for bypassing institutional requirements, this reason was not accepted. And, plaintiff attempted to grieve issues not properly grieved at the institution level. See 33-103.014, F.A.C. In any event, the grievance/appeal was returned without action as it did not comply with applicable procedural requirements.

Plaintiff now asserts that he set forth sufficient facts in his initial grievance for the warden to determine that staff had retaliated against him by searching his locker and writing him a CC in response to his participation in the grievance procedure. He claims that his "grievance of reprisal" should have been addressed on the merits, Rule 33-103.017(2), F.A.C., but that neither the Warden, the Office of the Secretary, or defense counsel has done this. While the court agrees that there may be more than one reasonable interpretation of the proper procedures plaintiff was required to follow to pursue his claim, the label that a prisoner puts on his grievance is not controlling on the Department. See *White v. Moore*, 789 So.2d 1118, 1120 (Fla. 1st DCA 2001) (courts defer to the agency's interpretation of the rules that it

administers) (citing *Pan Am. World Airways, Inc. v. Fla. Publ Serv. Comm'n*, 427 So.2d 716, 719 (Fla. 1983); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed. 2d 405 (1994). The difficulty lies, perhaps, in the somewhat hybrid nature of plaintiff's grievance. He sought to overturn the CC, but he sought to do so based on the theory of reprisal. Under 33-103.005(1), F.A.C., challenges to CC's must commence with informal grievances. However, under the same section, grievances of reprisal may be initiated via a formal grievance. Still, the fact remains that, as set forth above, the DOC did not accept plaintiff's grievance as one of reprisal at any level. It put him on notice of the deficiency in his first grievance and afforded him the opportunity to refile, which he chose not to do. His attempt to proceed directly to the Office of the Secretary was likewise unsuccessful. Had plaintiff followed proper procedural channels, the merits review he sought would have inevitably followed. Plaintiff's failure to comply with the procedural rules of the DOC's inmate grievance system means he has not properly exhausted his claim. *Woodford*, 126 S. Ct. at 2387–88.

Accordingly, it is respectfully RECOMMENDED:

1. That the defendants' motion for summary judgment (doc. 23) be GRANTED.
2. That plaintiff's cross-motion for summary judgment (doc. 25) be DENIED.

At Pensacola, Florida, this 22nd day of February, 2008.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**